Filed 7/17/23  P. v. Castro CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN MANUEL CASTRO,<br><br>    Defendant and Appellant. | 2d. Crim. No. B322907<br>(Super. Ct. No. BF179839A)<br>(Kern County) |

A jury convicted appellant Juan Manuel Castro of robbery (Pen. Code, § 212.5, subd. (a)), possession of ammunition by a convicted felon (*Id.,* § 30305, subd. (a)(1)), and attempting to dissuade a witness from reporting a crime (*Id.,* § 136.1, subd. (b)(1)).  In a bifurcated bench trial, the court found true allegations that appellant had two prior serious felony convictions.  It sentenced appellant to an aggregate term of 27 years, four months in state prison.

Appellant raises three issues.  First, he contends the trial court violated Evidence Code section 356 by denying his request

to play jurors the complete recordings of his two post-arrest interviews with law enforcement. Second, he contends the court erred by allowing a detective to testify about appellant's alleged gang ties. Third, he requests resentencing on his robbery conviction pursuant to Penal Code section 1170, subdivision (b).[1]

We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Irineo Mora called 911 on the night of January 18, 2020, to report a robbery at his apartment in Bakersfield's La Loma neighborhood. A woman had knocked on his door and asked for money. A man dressed in black then appeared from behind her with a handgun. The suspects ordered Mora to kneel on the ground while they searched his apartment for valuables. They took a TV, laptop, stereo, cell phone, $500 in cash, a pair of pants, and Mora's immigration papers. They also demanded the pin number for his Chase Bank debit card. Mora said the man threatened to "put people from his gang" on him if he spoke to police.

Deputy Jose Gamboa of the Kern County Sheriff's Office responded to the 911 call. He helped Mora contact Chase Bank to cancel his debit card over the phone. The bank confirmed someone had used the card moments earlier at a nearby convenience store. Sheriff's Detective Vidal Contreras later obtained images from the store's surveillance cameras. Mora identified the suspects in one of the images. Deputy Gamboa recognized the male suspect as appellant and arrested him soon after. Appellant was carrying an air pistol and a gun magazine with .38 caliber ammunition at the time of arrest.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

Deputy Gamboa and Detective Contreras each interviewed appellant after his arrest. Both interviews were recorded and transcribed. Appellant said his ex-girlfriend, Diane Barona, persuaded him to accompany her to Mora's apartment. Barona told him she had visited Mora on four prior occasions and knew he liked to "[spend] money on women to do drugs with him." Appellant believed Mora would give them cash so they could "make a run" for drugs in exchange for some beer. Appellant insisted he did not plan to rob Mora because doing so would violate the "rules" of the neighborhood. When they entered the apartment, though, Barona brandished a plastic handgun and began stuffing items into a duffle bag. Appellant admitted taking $100 from Mora's wallet but denied threatening him. They left and Barona immediately withdrew $40 from a convenience store's ATM using the victim's debit card. Appellant felt like Barona "set [him] up" by not telling him in advance about her plan to rob Mora.

The People disclosed that Deputy Gamboa and Detective Contreras would testify at trial about the post-arrest interviews. Appellant moved in limine under Evidence Code section 356 to play the complete interview recordings to ensure jurors would hear his admissions in context with other statements that mitigated his guilt. The trial court denied the motion but assured appellant he would have the opportunity to present "exculpatory statements contained within the same interview or the same conversation to those that are elicited by the People."

Appellant argued at trial that Barona tricked him into helping her with a robbery. While cross-examining Deputy Gamboa, defense counsel asked whether appellant said Barona knew the victim before the crime. Gamboa responded, "yes."

3

Defense counsel followed up with questions about specific things appellant claimed Barona told him in advance, like how she had visited Mora on four occasions and knew he bought drugs for prostitutes. The People objected to the statements as double hearsay. Appellant responded that the statements were admissible for their truth under section 356 to balance the officer's incomplete and misleading version of what appellant said during his interview. Appellant renewed his request to play the complete recordings to jurors. The trial court sustained the People's objections and denied the request. Later, Defense counsel asked Detective Contreras on re-cross whether appellant "knew for a fact . . . that Mr. Mora solicits girls to come and party with him and he buys them drugs." The court again sustained the People's objections.

Defense counsel also asked Deputy Contreras whether appellant said he would not rob anyone in La Loma because it was against the neighborhood's rules. Contreras confirmed appellant said "something like that" and interpreted the statement as meaning he would face consequences from the local gang. The People asked Contreras on redirect what he understood appellant meant by "rules." Contreras said this meant gang rules against robbing people who were not involved in drugs or the gang life. The People then asked whether appellant saying he was subject to these "rules" caused Contreras to "infer [appellant] was part of a gang?" Defense counsel's foundation objection was sustained and the People asked Contreras to describe his background, training and experience regarding gangs, which he did. The People then repeated their question "And so my follow-up question is, based on his response

4

to the, quote-unquote, rules of this neighborhood, did you believe that he was part of a gang?"  Contreras answered "Yes."

The jury found appellant guilty of robbery and not guilty of burglary.[2]  The court denied his motion for new trial but granted his motion to strike one of his prior convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.[3]

DISCUSSION

*Evidence Code section 356*

Appellant contends the trial court violated Evidence Code section 356 by denying his request to play his complete post-arrest interviews to the jury.  We disagree.

California's version of the common law "rule of completeness" is codified in Evidence Code, section 356.[4]  The purpose of the rule is "'to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed.'"  (*People v. Clark* (2016) 63 Cal.4th 522, 600.)  "We review the trial court's determination of whether or not to admit evidence under this

---

[2] The jury deadlocked on a single count of narcotics possession.

[3] The trial court denied appellant's earlier motion for mistrial on the same grounds.

[4] Evidence Code, section 356 states:  "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

5

provision for abuse of discretion." (*People v. Cornejo* (2016) 3 Cal.App.5th 36, 73, citing *People v. Pride* (1992) 3 Cal.4th 195, 235.)

We agree with the trial court's remark that offering a statement under section 356 does not mean "the remainder of the evidence code is tossed aside." Courts must balance the rules of completeness and hearsay when deciding which evidence is needed to complete a statement or place it in context. (See *People v. Armstrong* (2019) 6 Cal.5th 735, 786-787, citing *People v. Melendez* (2016) 2 Cal.5th 1, 26 [rule of completeness reflects the principle that "a party seeking introduction of one part of a statement cannot selectively object to introduction of other parts necessary to give context"].)

The trial court acted well within its discretion when it balanced the two rules here. It provided defense counsel wide latitude to cross-examine Deputy Gamboa and Detective Contreras about the exculpatory portions of appellant's interviews. Jurors heard testimony that Barona visited Mora's apartment prior to the alleged robbery; that appellant accompanied Barona to the apartment so he could help Mora buy drugs, not rob him; that Mora paid appellant $20 to procure the drugs; and that Barona, not appellant, initiated the robbery by pulling out a gun and packing items into a bag. The decision to exclude testimony about the exact number of occasions Barona had visited the apartment, or about Mora's purported association with prostitutes, did not leave appellant's statements to law enforcement incomplete or misleading. Appellant's alternate narrative, in fact, seems to have prevailed because the jury acquitted him of burglary.

*Gang Membership*

Appellant contends his due process rights were violated when Detective Contreras testified he believed appellant was a gang member. We again disagree.

The testimony at issue flowed from questions by defense counsel about statements appellant made to Contreras about neighborhood "rules." Defense counsel asked Contreras whether appellant stated "there's not supposed to be robberies of this nature" in La Loma. Contreras responded appellant had "alluded to something like that." After reviewing the interview transcript to refresh his memory, Contreras clarified appellant said "he wouldn't rob anyone like that, and if he did, he would wear a mask, and alluded to [there] being consequences from gang members if he did that." Defense counsel asked again whether appellant specifically mentioned there were "rules against that." Contreras responded, "Something to that [effect], yes."

The issue arose again on redirect examination. The People asked, "what are these rules that you understood [defense counsel] was referring to?" Contreras responded that in the context of the interview he understood the statement to mean appellant "would not be able to commit robberies like that because it would have consequences from the local gang of robbing someone that wasn't involved in drugs, or involved in the gang life, that would somewhat be of a civilian stature." This response drew an objection from defense counsel as lacking foundation. The People addressed the objection by eliciting testimony about Contreras's gang-specific training and experience, then proceeded to ask whether he believed appellant belonged to a gang based on the statements about neighborhood rules. Appellant did not object. Contreras answered in the

affirmative. On recross examination he conceded appellant did not use the term "gang" or expressly admit belonging to one.

Courts "must 'carefully scrutinize' gang-related testimony before admitting it into evidence because the content of such testimony 'may have a highly inflammatory impact on the jury.'" (*People v. Flores* (2020) 9 Cal.5th 371, 402, quoting *People v. Williams* (1997) 16 Cal.4th 153, 193.) "The risk of injecting undue prejudice is particularly high in cases where the prosecution has not charged a gang enhancement and the probative value of the gang evidence is minimal." (*Flores* at p. 402, citing *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) Detective Contreras's brief testimony about appellant's alleged gang membership, however, did not unduly prejudice appellant. The victim had already testified that appellant threatened to "get his gang on me." Defense counsel raised the issue again when he asked Contreras about the "rules" in Mora's neighborhood. The People were entitled to ask on redirect how and why those rules applied to appellant. The possible minimal prejudice that may have resulted was outweighed by its probative value. (See e.g., *Flores* at p. 402 [prejudice resulting from gang evidence outweighed by its probative value; expert testimony about gang culture was "highly relevant to defendant's possible motive for the charged crimes"].)

*Sentencing Error*

The trial court imposed the upper term of six years on appellant's robbery conviction, which it then doubled based on a prior serous felony conviction. (§§ 667, subd. (e), 1170.12, subd. (c)(1).) Appellant contends, and the Attorney General concedes both that Senate Bill No. 567's amendments to Penal Code section 1170, subdivision (b) apply retroactively to the sentence

8

on this charge and that its application requires remand for resentencing.  (Sen. Bill No. 567 (2021-2022 Reg. Sess.) § 1.)[5]  We agree the law applies retroactively but disagree its application requires resentencing

Former section 1170, subdivision (b) gave trial courts discretion to decide which of the three terms specified for an offense would best serve the interests of justice.  Senate Bill No. 567 amended subdivision (b) to require imposing the middle term as the presumptive sentence effective January 1, 2022.  (§ 1170, subd. (b)(1)-(2); Stats. 2021, ch. 731, § 1.3.)  A court may now impose the upper term only if "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)  Subdivision (b)(3) creates an exception, allowing the court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

The trial court cited five aggravating factors when it imposed the upper term on appellant's robbery conviction: (1) appellant's prior convictions as an adult were numerous (Cal. Rules of Court, rule 4.421(b)(2)); (2) he had served four prior prison terms (rule 4.421(b)(3)); (3) he was on Post-Release Community Supervision when he committed the crime (rule

---

[5] We requested supplemental briefing regarding whether the error was harmless.  Appellant filed a letter brief, Respondent did not.

9

4.421(b)(4)); (4) his prior performance on probation was unsatisfactory in that he failed to comply with terms or reoffended (rule 4.421(b)(5)); and (5) he had an active warrant for his arrest at the time of the offense (rule 4.421(b)(5)).

The trial court found only one of the five aggravating factors true beyond a reasonable doubt as required by amended section 1170.  Factor 1 was established by certified copies of appellant's prior felony convictions.  The remaining factors were evidenced only by the sentencing report.  This was not a certified record of conviction.  (*People v. Dunn* (2022) 81 Cal.App.5th 394, 408–409 (*Dunn*), review granted Oct. 12, 2022, S275655.)  Given this error, we must determine whether it was harmless under both federal and state standards.  (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109–1110 (*Zabelle*)) [error alone not ground for reversal].)

We apply a two-step analysis for determining whether the error was harmless:  (1) whether the court could impose the aggravated term under the Sixth Amendment, applying the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, in the manner described in *People v. Sandoval* (2007) 41 Cal.4th 825, 839; and (2) whether the court would impose the aggravated term under section 1170 applying the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818.  (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1112.)

In step one, we ask whether a jury unquestionably would have found true beyond a reasonable doubt at least one of the aggravating factors the trial court relied on in imposing the aggravated sentence.  (*Zabelle*, *supra*, 80 Cal.App.5th at pp. 1112-1113.)  The answer here is "yes."  The trial court found, beyond a reasonable doubt, that appellant suffered two prior

10

convictions after considering certified records of those convictions. We have no doubt a jury would have reached the same conclusion. Thus, there was no Sixth Amendment error.

In step two, we must consider whether it is reasonably probable that the jury would have found each aggravating factor "not true." If any aggravating factors survive this inquiry, we must then determine "whether it is reasonably probable that the trial court would have chosen a lesser sentence" had it considered these surviving factors. (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1112.) We conclude it is not reasonably probable the jury would have found factors two through five not true. They are not "vague" or "subjective," (*People v. Sandoval* (2007) 41 Cal.4th 825, 840 [it is more difficult for a reviewing court to conclude a jury would assess the aggravating fact in the same manner as the trial court when the fact rests on a somewhat vague or subjective standard]) and they were undisputed. (See *People v. Epps* (2001) 25 Cal.4th 19, 29 [finding the denial of a statutory right to a jury trial on a prior conviction harmless where the only factual question for the jury was whether the prior convictions occurred, and the defendant did not question this fact].) Defense counsel even admitted while arguing in a pre-sentence motion to strike that his client had "numerous offenses." His supporting declaration stated appellant "suffered two strike prior convictions" and had a long criminal history including "petty drug offenses, misdemeanor spousal abuse, felony assault, receiving stolen property, vehicle theft, passing false checks, and trespass."

Finally, going beyond the two-step harmless error analysis, we conclude "the record clearly indicates that the court would have imposed an upper term under its new, circumscribed discretion." (*People v. Lewis* (2023) 88 Cal.App.5th 1125, 1137,

11

review granted May 17, 2023, S279147.)  The trial court ultimately struck one prior conviction, a 1991 robbery, but did not strike more recent ones.  It explained:  "considering the current circumstances, [appellant's] criminal history, including the age of the 1991 strike, including the circumstances of that strike, including the sentence that was imposed, and *including consideration for the fact that it is still possible for the Court to impose a significant and substantial sentence in this case*." (Italics added.)  The court added, "That does not mean I'm striking [the prior 1991 strike] for purposes of imposition of the 667(a).  That is, in fact, part of my consideration, that I still have the opportunity to impose that five-year enhancement as part of the overall sentence in this matter."  This shows the court partially granted the motion to strike with the intention of reaching a substantial sentence based upon the aggravated term. "[T]he record clearly indicates that the trial court would have imposed the same sentence under the new law."  (*People v. Lewis* (2023) 88 Cal.App.5th 1125, 1137.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P.J.          BALTODANO, J.

12

David R. Zulfa, Judge
Superior Court County of Kern

_____

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen, Supervising Deputy Attorney General, and Ross K. Naughton, Deputy Attorney General, for Plaintiff and Respondent.